401 A.2d 1223

COMMONWEALTH of Pennsylvania

v.

Linda WICKS, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 24, 1978.

Decided April 13, 1979.

Paulette J. Balogh, Assistant Public Defender, Pittsburgh, for appellant.

Charles W. Johns, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before VAN der VOORT, SPAETH and LIPEZ, JJ.

SPAETH, Judge:

This appeal involves the issue of whether in imposing sentence the lower court complied with the requirements of *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977).

Appellant was charged with eight separate counts of theft by unlawful taking.[1] The circumstances of each charge were similar; appellant had gained entrance to the victim's house under some pretense and had taken money or other valuables. On March 3, 1977, appellant visited the house of Edward Mitchell and asked and was permitted to enter to use the bathroom. After she had left the house, Mr. Mitchell discovered that $50 had been removed from his dresser drawer. On March 18 appellant went to the house of Fanny Mainer. After she had left the house, $17 was missing from Ms. Mainer's purse. On March 22, while with a friend at Rose Hunter's house, appellant stole $60 of Ms. Hunter's money. On April 2 appellant went to the house of Leanora Ebberhart and was allowed to use the telephone. When she left, Ms. Ebberhart's watch and several other items totaling $228 were missing. On April 4, while in the house of

---

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3921.

Philomena Wells, appellant entered the living room and removed $40 and a necklace from Ms. Wells' purse. On June 13 appellant obtained access to the house of James Owens under the pretense of making a telephone call and took property worth $18. Similarly, on June 14, she was allowed into the house of Cleo Dunn to make a telephone call and, while there, took property worth $122. Finally, on June 25 appellant was permitted to enter the house of William Williams, Jr., under the pretense of waiting for her brother, who lived in the apartment next door, and stole property valued at $155.

At a hearing on August 22, 1977, appellant pleaded guilty to five counts of theft by unlawful taking. Sentencing was deferred pending the preparation and receipt of a pre-sentence report and the disposition of the three remaining counts. The sentencing hearing took place on October 4, 1977, and at that time appellant pleaded guilty to the remaining counts.

Since five of the eight thefts involved property valued at $50 or more, they were misdemeanors of the second degree. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, as amended, Act of June 17, 1974, P.L. 356, No. 118, § 1, 18 Pa.C.S. § 3903(b)(1). The other three thefts involved property valued at less than $50, and were therefore misdemeanors of the third degree. *Id.* § 3903(b)(2).

At the beginning of the sentencing hearing the lower court stated:

THE COURT: Bring her forward. Having gone over the pre-sentence report, this young lady has been in all kinds of difficulty, and the Court has to do something about it. We can't let this go on.

It is the sentence of the Court—

MR. RUSLANDER: Excuse me, Your Honor.

THE COURT: Do you have anything to say?

MR. RUSLANDER: Yes. We have Linda's mother in court and we just want to comment on a couple of aspects of the pre-sentence report.

N.T. Sentencing 2.

Appellant's mother testified that appellant had had a drug problem in the past but no longer wanted and no longer was involved with heroin. She also testified that appellant would be welcome to live at home, that their relationship had improved, and that she had been caring for appellant's eight month old child. N.T. Sentencing at 2–7. After appellant's counsel had finished questioning the mother, the following exchange took place:

MR. RUSLANDER: Does your Honor have any questions of Mrs. Wicks?

THE COURT: No. I have this report here that indicates a long history of stealing. Something has to be done about it. She was put on probation twice; that didn't do any good.

MR. RUSLANDER: Your Honor, when we first entered the guilty plea, I remember Mr. Hilner standing up and saying he thought this young lady should be taken out of the criminal system. We would only ask that the Court take into consideration that she has spent the last three months in jail and give her a chance.[2]

THE COURT: She has been given two chances.

MR. RUSLANDER: I believe the only probation she ever received was in '76 from Judge Ross.

THE COURT: She received one in '76 and also received one in May of '77.

MR. RUSLANDER: That's when we entered the guilty plea, I think, Your Honor.

THE COURT: We can't permit this to go on in the community and I don't intend to. I'm ready to sentence. Anything else to be said.

MR. RUSLANDER: Linda, do you have something you'd like to say to the Court before sentence is imposed?

2. At trial the district attorney had said:
If we can get her out of the system right now, she has background problems, if we can do something to get her out of the system that will satisfy the Commonwealth. All I am looking for is a presentence report. N.T. 11.

THE DEFENDANT: I learned my lesson.

N.T. Sentencing at 7–8.

The court then sentenced appellant to two to four years in prison on one misdemeanor of the second degree theft, and suspended sentence on the remaining four misdemeanors of the second degree, and to one to two years in prison on each of the three misdemeanors of the third degree, all sentences to be concurrent. Thus the total maximum imprisonment faced by appellant was two to four years.

Appellant filed a petition for resentencing with the lower court.[3] The court entered an order providing that "a hearing had to be arranged by the trial judge if he should determine that the request is justified." (Order of November 2, 1977.) The trial judge did not arrange a hearing, however, and appeal was taken to this court.

Under the Pennsylvania system of indeterminate sentencing, "[i]mposition of a proper sentence is a matter vested in the sound discretion of the trial court, whose determination is to be respected unless it constitutes a manifest abuse of discretion." *Commonwealth v. Valentin,* 259 Pa.Super. 496, 499–500, 393 A.2d 935, 937 (1978); *see Commonwealth v. Knight,* 479 Pa. 209, 212, 387 A.2d 1297, 1299; *Commonwealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976). In imposing sentence the court "must not overlook pertinent facts, disregard the force of the evidence, commit an error of law . . . or inflict punishment exceeding that prescribed by statute." *Commonwealth v. Knight, supra,* 479 Pa. at 212, 387 A.2d at 1299; *see Commonwealth v. Lee,* 450 Pa. 152, 299 A.2d 640 (1973). The court must consider the character of the defendant and the particular circumstances of the offense in light of the legislative guidelines for sentencing, and must impose a sentence that is the minimum sentence consistent with the protection of the public, the gravity of the offense, and the rehabilitative

**3.** In *Commonwealth v. Riggins, supra,* the Supreme Court stated that "a defendant who seeks to challenge the propriety of his or her sentence should first present his or her claim to the trial court." 474 Pa. at 136, 377 A.2d at 151. *See Commonwealth v. Walls,* 481 Pa. 1, 391 A.2d 1064 (1978).

needs of the defendant. *See* The Sentencing Code, Act of Dec. 30, 1974, P.L. 1052, No. 345, 18 Pa.C.S. § 1321(b) (Supp.1977); *Commonwealth v. Knight, supra; Commonwealth v. Riggins, supra.*

In *Commonwealth v. Riggins, supra,* the Supreme Court of Pennsylvania held that to further compliance with these principles, the lower court must state on the record its reasons for the sentence imposed. *See Commonwealth v. Kostka,* 475 Pa. 85, 379 A.2d 884 (1977); *Commonwealth v. Bolyard,* 256 Pa.Super. 57, 389 A.2d 598 (1978). Thus in *Commonwealth v. Kostka, supra,* the Court vacated the sentence and remanded for resentencing because "the trial judge failed to articulate reasons for the sentence imposed reflecting *'weight' was accorded the statutory guidelines for sentencing.*" 475 Pa. at 90, 379 A.2d at 887. (emphasis added)

█ The Sentencing Code provides several possible dispositions of criminal defendants, including probation, total confinement, and partial confinement. The Sentencing Code, Act of Dec. 30, 1974, P.L. 1052, No. 345, § 1, 18 Pa.C.S. § 1321(a) (Supp.1977). In this case, appellant's counsel requested probation, basing his request on the statement by the Commonwealth that it only sought to "get her out of the system right now, she has background problems", N.T. 11, and on the testimony by appellant's mother that appellant was no longer involved with drugs and her situation at home had improved. In appraising this request, the court was obliged to accord weight to the following factors:

(1) The criminal conduct of the defendant neither caused nor threatened serious harm.

(2) The defendant did not contemplate that his conduct would cause or threaten serious harm.

(3) The defendant acted under a strong provocation.

(4) There were substantial grounds tending to excuse or justify the criminal conduct of the defendant, though failing to establish a defense.

(5) The victim of the criminal conduct of the defendant induced or facilitated its commission.

(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained.

(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime.

(8) The criminal conduct of the defendant was the result of circumstances unlikely to recur.

(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime.

(10) The defendant is particularly likely to respond affirmatively to probationary treatment.

(11) The confinement of the defendant would entail excessive hardship to him or his defendants [sic].

(12) Such other grounds as indicate the desirability of probation.

*Id.* § 1322.

If after this weighing, the court concluded not to impose a sentence of probation, it was next obliged to consider whether total confinement as opposed to partial confinement was appropriate.[4] *See Commonwealth v. Kostka, supra,* 475 Pa. at 91, 379 A.2d at 887.

 Here, the lower court did have a pre-sentence report, and it did make some statements of record reflecting

---

4. Section 1325 of the Sentencing Code provides:

The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:

(1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;

(2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or

(3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

18 Pa.C.S. § 1325 (Supp.1977)

an opinion that probation would not be appropriate. These statements, however, fall short of complying with the requirements of *Commonwealth v. Riggins, supra.* In the first place, the court's statement that appellant had twice before been on probation was factually incorrect, for, as appellant's counsel brought to the court's attention, appellant was only once before on probation. In the second place, and of decisive importance, the court's statements were insufficient because, in consequence of their brevity and conclusory quality, they do not manifest a consideration of the statutory guidelines for sentencing, nor otherwise explain the reasoning behind the sentences imposed. Nor is there any statement of reasons in the lower court's opinion filed pursuant to this appeal.[5] *See Commonwealth v. Wertz,* 252 Pa. Super. 584, 384 A.2d 933 (1978) (where neither record nor lower court opinion contains reasons for sentence imposed, remand for resentencing required).

■ It is true, as the Commonwealth points out, that the court did have a pre-sentence report and did hear testimony concerning appellant's background, drug problem, and home life. *Testimony,* however, and the contents of a pre-sentence report, cannot constitute a statement of *reasons;* they rather constitute only the beginning of the process by which the court formulates its statement of reasons. Having received the testimony and pre-sentence report, the court must evaluate them; the testimony may well be in conflict, or not be credible, or otherwise not acceptable to the court, and the same may be so of the contents of the pre-sentence report. This evaluation completed, the court must examine the facts, as it has determined them to be, in light of the statutory guidelines for sentencing. Then, and only then,

---

5. The lower court filed an opinion but did not discuss the sentencing issue on the ground that appellant had not filed a petition to withdraw her guilty pleas. It is clear, however, that appellant was correct in filing a petition for reconsideration of her sentences without filing a petition to withdraw her guilty pleas. *Commonwealth v. Walls, supra,* 481 Pa. at 4, 391 A.2d at 1065.

should the court decide what sentence should be imposed. Finally, having made that decision, the court must state its reasons for the sentence.

It is not our province to guess at the lower court's reasons for the sentence, and we must not substitute our thought processes for what might have been the thought processes of the lower court.[6] It has not been held that the court's statement of reasons must specifically cite to or include the language of the Sentencing Code.[7] However, the statement of reasons must demonstrate that the court has considered the factors specified in the Code, and that it has balanced the specific background, character, and circumstances of the defendant with the circumstances of the crime, the need for incarceration, to prevent future offenses by the defendant and by others, and the possibility of rehabilitation. *See Commonwealth v. Valentin, supra* (statement of reasons did not specifically cite to the Sentencing Code but adequately reflected balancing of all relevant factors). The failure of the lower court to file such a statement of reasons here was error.

The sentences are vacated and the case is remanded for resentencing.[8]

VAN der VOORT, J., concurs in result.

**6.** Thus in *Commonwealth v. Riggins, supra,* the Court cited as one ground for requiring a statement of reasons the fact that such a statement "will be invaluable in aiding appellate courts to ascertain whether the sentence imposed was based upon accurate, sufficient and proper information." 474 Pa. at 131, 377 A.2d at 148. Indeed, without a full statement by the lower court informing us why it imposed a particular sentence, we cannot review a claim that the sentence was excessive.

**7.** This would be a preferred procedure, however.

**8.** Appellant has also argued that the sentences were excessive. Since we remand for resentencing, we do not reach this issue. In fact, without a statement of reasons we cannot decide the issue of the excessiveness of the sentences under the circumstances. *See* note 6 *supra.*